MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellee,

v.

Sam GOLDMAN, Appellant.

No. 78–1427.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1978.

Decided March 14, 1979.

Rehearing Denied April 5, 1976.

Stuart J. Radloff of Friedman & Fredericks, St. Louis, Mo., argued and on brief, for appellant.

Henry D. Menghini of Evans & Dixon, St. Louis, Mo. (argued), and Gerre S. Langton, St. Louis, Mo., on brief, for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and ROBINSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Appellant Sam Goldman appeals from a judgment entered by the District Court for the Eastern District of Missouri[1] in favor of appellee Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter Merrill Lynch). Merrill Lynch initiated the action to recover an alleged deficiency of $119,145.00 in appellant's commodities margin trading account.[2]

For reversal appellant argues that the district court erred in (1) making certain findings of fact and conclusions of law, (2) not finding that false financial statements were submitted by broker Palmen and thus constituted a violation of the antifraud provisions of the Commodities Exchange Act, 7 U.S.C. § 6b, and (3) dismissing Count III of appellant's second amended counterclaim. For the reasons discussed below, we affirm the judgment.

In early May of 1976, appellant opened a commodities margin trading account with Merrill Lynch. Appellant's account executive was a broker named Stephen Palmen. Appellant eventually purchased five futures contracts through Merrill Lynch. These contracts were agreements to purchase one million pesos on a given maturity date at a given price. Unfortunately for appellant, on August 31, 1976, the Mexican government announced that it would no longer support the peso at the fixed rate of eight cents per peso and instead would permit the peso to "float." As a result, the peso decreased markedly in value. Appellant sustained an approximate loss of 44% of his entire investment.

Of more immediate concern, however, was the fact that the International Monetary Market substantially increased its margin requirements in light of the peso devaluation. On September 2, 1976, Merrill Lynch notified appellant of the increased margin requirements and requested appellant to deposit $125,000 in satisfaction thereof. Appellant did not do so. On September 8, 1976, Merrill Lynch sold appellant's five peso futures contracts at a loss of over $119,000 to appellant's account. This sale was pursuant to the broker-client Com-

---

* The Honorable Richard E. Robinson, Senior District Judge for the District of Nebraska, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

2. The basis of jurisdiction was diversity of citizenship. Merrill Lynch is a Delaware corporation with its principal place of business in New York; appellant is a resident of Missouri.

modity Account Agreement.[3] The deficiency in appellant's account is the subject of this litigation.

Appellant filed a counterclaim in four counts, which appellant characterized[4] as alleging common law fraud (I), statutory fraud in violation of the Commodities Exchange Act, 7 U.S.C. § 1 *et seq.* (II), breach of Merrill Lynch's "duty to know your customer" and to supervise the account (III), and conflict of interest (IV). Although Counts II, III and IV were dismissed,[5] the district court did permit appellant to introduce evidence relevant to these counts. After a trial, the district court entered its judgment in favor of Merrill Lynch for $119,145.00 plus interest. The district court specifically found that Merrill Lynch had committed no fraud, no misrepresentation and no violation of the Commodities Exchange Act.

Appellant first argues that the district court erred in making certain findings of fact and conclusions of law. Appellant specifically challenges the findings that (1) appellant was a "knowledgeable investor," (2) Merrill Lynch extended the margin trading limits of appellant's account to $50,000, (3) appellant prepared the New Account Infor-

mation form and supplied erroneous financial information to broker Palmen and Merrill Lynch, (4) Palmen made no representations to appellant concerning the safety and stability of the peso as an investment, and (5) Merrill Lynch committed no violation of the *Securities* Exchange Act.

These allegations of error as well as the record indicate that the present case involved many disputed issues of fact. Because this case was tried by the district court, sitting without a jury, our review is somewhat limited. *Fed.Rules Civ.Proc.* 52(a). The findings of the trial court will not be set aside unless clearly erroneous and unsupported by substantial evidence or, if supported by substantial evidence, we are satisfied that a mistake has been made. *E. g., Birdwell v. Hazelwood School Dist.,* 491 F.2d 490, 494 (8th Cir. 1974). In particular we note that "it is not the function of an appellate court to try the case *de novo,* or to pass upon the credibility of witnesses or the weight to be given their testimony . . ." *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 155 (8th Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). This is especially true where the case is primarily based upon oral testimony

---

**3.** The Commodity Account Agreement (Exhibit # 2) is one of several forms filled out by persons opening commodities margin trading accounts. Basically, the agreement authorizes Merrill Lynch to sell any or all of the commodities or contracts in an account whenever in its discretion it considers it necessary and to hold the investor liable for any deficiency remaining in the account in the event of liquidation.

**4.** Appellant's characterization of Count II is disputed by Merrill Lynch. Merrill Lynch argues that Count II did not, as alleged by appellant, allege that Palmen intentionally submitted a false financial statement on appellant in violation of the Commodities Exchange Act, 7 U.S.C. § 6b. Count I alleged that Merrill Lynch, through Stephen Palmen, defrauded appellant by misrepresenting the soundness of the peso as an investment in violation of the Commodities Exchange Act, 7 U.S.C. §§ 6b, 6o. Count II adopted all of Count I and further alleged that Merrill Lynch, through Stephen Palmen, defrauded appellant by "wrongfully" attempting to enlist appellant in the Guided Investment Program in violation of exchange

rules, Merrill Lynch's house rules and good brokerage practice. Count III adopted all of Counts I and II and further alleged that Merrill Lynch breached its duty to adequately review and supervise appellant's account. Appellant specifically asserted that Palmen was the source of the false and inaccurate financial and personal information on the New Account Information form (Exhibit # 1). Count IV adopted all of Counts I, II and III and further alleged that Merrill Lynch had inside information about the devaluation of the peso which it selectively disclosed in reckless disregard of appellant's financial welfare. Appellant was unable to establish either that Merrill Lynch knew in advance of the devaluation or had disclosed such information to selected customers. "For all practical purposes, Count IV is not involved in this appeal." Brief of Appellant at 8.

**5.** *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* No. 76–852C(1) (E.D.Mo., Dec. 29, 1977) (order granting plaintiff's motion to dismiss Counts II, III and IV of defendant's second amended counterclaim).

and where the trial judge has had an opportunity to view the demeanor and credibility of the witnesses. *E. g., Snodgrass v. Nelson*, 503 F.2d 94, 96 (8th Cir. 1974).

■ After a careful review of the evidence, we are unable to agree with appellant. We cannot say that three of the challenged findings of the trial court are clearly erroneous: (1) that appellant was a "knowledgeable investor," (2) that appellant prepared the New Account Information form and supplied erroneous financial information to broker Palmen and Merrill Lynch, and (3) that Palmen made no representations to appellant about the safety of the peso as an investment. There was evidence that appellant was aware of the circumstances that made the peso more profitable and more speculative an investment and that appellant had already invested a substantial amount in certificates of deposit in Mexican banks. There was also evidence that appellant completed the New Account Information form as part of the forms every new commodities customer is required to complete and that this information was used by the clerical staff of Merrill Lynch in typing the form itself. We also note, without any evaluation of its accuracy, that a credit service report prepared at the request of Merrill Lynch contained information roughly similar to that reported on the form. This finding and the finding about the lack of representations made to appellant are particularly dependent upon the district court's evaluation of the credibility of the witnesses. The parties presented directly contradictory evidence on each of these factual issues. With this observation in mind, we note that the evidence showed appellant approached Palmen with an interest in peso futures (developed from reading unsolicited investment newsletters), appellant discussed the peso with Palmen, Palmen then telephoned Merrill Lynch's foreign currency specialists in Chicago, the specialists noted the peso market was erratic and speculative and expressed "no opinion," and the next day appellant placed his first order to purchase peso futures contracts. Of the two findings that are erroneous, the limit of appellant's margin and the reference to the *Securities* Exchange Act instead of the *Commodities* Exchange Act, neither error in our opinion prejudiced appellant's case.[6]

■ Secondly, appellant argues the district court erred in not finding that Palmen submitted the false financial statements to his superiors at Merrill Lynch in violation of the antifraud provisions of the Commodities Exchange Act, 7 U.S.C. § 6b. The informa-

---

6. Appellant accurately challenged the validity of the district court's finding that Merrill Lynch raised the margin trading limit of appellant's account to $50,000. The record indicates that Merrill Lynch at no time raised appellant's trading limit. Merrill Lynch concedes this in its brief. Brief of Appellee at 34. We do not find this error was prejudicial. Count II of appellant's counterclaim alleged a failure on the part of Merrill Lynch to "know your customer" and thus a failure to place appropriate limits on appellant's account. It does appear from the evidence that at one point appellant's account exceeded its margin trading limit by about $7,000. Even assuming, however, that appellant sought to allege a violation of the margin maintenance rules, such a failure in the absence of fraud would not constitute a basis for the imposition of liability upon the broker. *Cf. Carras v. Burns*, 516 F.2d 251 (4th Cir. 1975) (Securities Exchange Act). In *Carras v. Burns* the executors of an estate sued a stockbrokerage firm and two of its employees for losses sustained by the estate's margined securities account, allegedly as a result of the firm's failure to make timely margin calls to maintain the estate's equity. Such a failure violated the stock exchange rules. The court, however, declined to recognize a private cause of action for the breach of the rules alone and in the absence of fraud. *Id.* at 260. The court noted the margin rules had been promulgated primarily to protect the solvency of *brokers* by requiring adequate collateral to finance margin trading by their customers. *Id.* Further, the court observed that violation of the margin rules would perhaps subject the broker to discipline by the exchange but not to liability for loss unless the breach of rules also violated the securities act by operating as a fraud. *Id.*

The other error was the district court's reference to the *Securities* Exchange Act in its second conclusion of law. In our opinion this reference can be characterized as a clerical error and does not indicate the district court misunderstood the nature of appellant's defenses or counterclaims.

tion on the form indicated appellant had $500,000 in stocks and commodities, his annual income was approximately $50,000, his estimated net worth was $2 million, and his available risk capital for commodities trading was $100,000. Appellant's actual financial position was considerably below these figures. Appellant argues that Palmen was responsible for supplying the false information and that Palmen, and ultimately Merrill Lynch, was in fact engaged in a scheme to attempt to defraud appellant. Appellant contends the false financial information was just one part of this fraudulent scheme intended to involve appellant in an ambitious investing program for which he was unqualified. The district court expressly found that appellant himself supplied this false information. As was true of the other challenged conclusions of the district court,

this finding was based to a large extent upon the district court's evaluation of the credibility of the witnesses, to which we defer. We are unable to say the finding of the district court was clearly erroneous.[7]

Finally, appellant argues that the district court erred in dismissing Count III of appellant's counterclaim which alleged Merrill Lynch failed to supervise appellant's account and Palmen's handling of the account, failed to "know your customer" and failed to review appellant's suitability and qualifications as a commodities investor. Appellant argues Merrill Lynch in so doing violated its house rules,[8] stock exchange rules,[9] dealer association rules,[10] and good brokerage practice. Appellant argues these violations give rise to a private cause of action. Under the facts of the present case, we must disagree with appellant.

7. Further, in our opinion, appellant's statutory fraud issue was raised in Count I of the amended counterclaim even though, as appellant argues in his reply brief, it was more explicitly set forth in Count II. In any event, the allegation of statutory fraud was given adequate consideration by the district court and ultimately rejected. The district court memorandum reveals that Count II was dismissed as repetitive of Counts I and III and not for the reason that the district court failed to recognize a private cause of action for violations of the Commodities Exchange Act. Such actions are well recognized. *See Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 103 n.8 (7th Cir. 1977); *Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529, 534 (7th Cir.), *rev'd on other grounds sub nom. Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973) (citation of cases); *Booth v. Peavey Company Commodity Services*, 430 F.2d 132, 133 (8th Cir. 1970).

8. Merrill Lynch's house rule 09.12 provides in part:

As a basic policy, the Corporation [Merrill Lynch] does not wish to handle speculative commodity business for individuals who cannot afford the risks, and for those who are tempermentally not suited to commodity trading. Those who are not willing to take the time to learn what they are doing should be discouraged from trading.
. . . We do not wish to handle speculative commodity business for individuals with small net worth or small annual income. Neither do we wish to handle business for those individuals regardless of net worth or income whose losses would be detrimental to

their general standard of living nor for those whose family responsibilities are such that any loss of capital would impair the financial security of the individual and his dependents.

9. New York Stock Exchange Rule 405 is popularly known as the "know your customer" rule. It provides in part:

Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to
(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.
(2) Supervise diligently all accounts handled by registered representatives of the organization.
(3) Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer, provided, however, that in the case of branch offices, the opening of an account for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable time be approved by a general partner, a principal . . . .

10. National Association of Security Dealers Rule 27 provides in part:

(a) Each member shall establish, maintain and enforce written procedures which will enable it to supervise properly the activities of each registered representative and associated person to assure compliance with appli-

We note initially that none of the cases cited by appellant have recognized a private cause of action for alleged violations of a broker's house rules. The question whether a violation of a private stock exchange or trade association rule, required to be promulgated by federal law, such as a rule of the New York Stock Exchange or the National Association of Security Dealers, gives rise to a private cause of action in favor of a customer damaged as a result of the violation is a "troublesome one." *Shull v. Dain, Kalman & Quail, Inc., supra*, 561 F.2d at 160. Most of the cases have answered the question affirmatively *but* with some reservations. *See Avern Trust v. Clarke*, 415 F.2d 1238, 1242 (7th Cir. 1969); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135, 142 (7th Cir.), *cert. denied*, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Evans v. Kerbs & Co.*, 411 F.Supp. 616, 624 (S.D.N.Y.1976); *cf. Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 181–83 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (sets forth test under which to evaluate whether to imply private cause of action from federal regulatory statutes); *see generally* Lowenfels, *Implied Liabilities Based Upon Stock Exchange Rules*, 66 *Colum.L.Rev.* 12 (1966); Note, *Private Rights of Action for Commodity Futures Investors*, 55 *B.U.L.Rev.* 804 (1974). In particular, the courts have typically found no private right of action exists for violation of exchange or dealer association rules in the absence of a finding of fraud. *See, e. g., Shull v. Dain, Kalman & Quail, Inc., supra*, 561 F.2d at 160; *Lincoln Commodity Services v. Meade*, 558 F.2d 469, 474 n.1 (8th Cir. 1977); *Carras v.*

*Burns, supra*, 516 F.2d at 260; *Evans v. Kerbs & Co., supra*, 411 F.Supp. at 624; *Architectural League v. Bartos, supra*, 404 F.Supp. at 314.

In the present case the district court should not have dismissed Count III because appellant did state a private cause of action by alleging violations of exchange and dealer association rules accompanied by allegations of fraud. *See Evans v. Kerbs & Co., supra*, 411 F.Supp. at 624 (cases cited therein). As noted above, however, the district court permissibly found that appellant failed to prove fraud on the part of Merrill Lynch. Even if Merrill Lynch had been found to have violated the exchange and/or dealer association rules, such a violation, in the absence of facts establishing fraud, would not constitute an independent basis for liability. *See, e. g., Lincoln Commodity Services v. Meade, supra*, 558 F.2d at 474 n.1. Therefore, we conclude in this case that the district court committed no reversible error in dismissing Count III.

The judgment of the district court is affirmed.

---

cable securities laws, rules, regulations and statements of policy promulgated thereunder with the rules of this Association.

.    .    .    .    .

(d) Each member shall review the activities of each office, which shall include the periodic examination of customer accounts to detect and prevent irregularities or abuses and at least an annual inspection of each office and supervisory jurisdiction.
The National Association of Security Dealers Rules of Fair Practice, Article III, § 2, *CCH NASD Manual* ¶ 2152, *Art. III, § 2*, provides:

In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.
This rule is also referred to as the "know your customer" or suitability rule. *E.g., Architectural League v. Bartos*, 404 F.Supp. 304, 314 (S.D. N.Y.1975).