**FIELDS ENGINEERING & EQUIP-
MENT, INC., Appellant,**

v.

**CARGILL, INC., Appellee.**

No. 80–1685.

United States Court of Appeals,
Eighth Circuit.

Submitted April 2, 1981.

Decided June 15, 1981.

Rehearing Denied July 22, 1981.

Samuel L. Boyd, (argued), McElroy & Boyd, Dallas, Tex., for appellant.

Peter S. Hendrixson (argued), Ronald J. Brown, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Fields Engineering & Equipment, Inc., brought suit against Cargill, Inc., for damages for an alleged breach of a construction contract. Cargill counterclaimed and sought damages, including lost profits. The District Court ruled in favor of Cargill and awarded it $117,578.62. Fields appeals from that decision.

Fields Engineering & Equipment, Inc., is a Texas corporation with its principal place of business in Lubbock, Texas, and is primarily engaged in millwright construction work. Cargill, Inc., is a Delaware corporation with its principal place of business in Minneapolis, Minnesota, and is engaged in grain distribution. In 1975, the parties entered into an agreement for the construction of an overhead conveyor-belt system between two grain-storage facilities owned by Cargill in Clarion, Iowa. Fields had previously performed construction work for Cargill in both Nebraska and Texas.

Fields commenced work on the project on September 1, 1975. Two months later, Fields forwarded its first monthly invoice for payment on the basis of time spent in performance of the job and the cost of materials used in construction, that is, a "time and materials" method of billing. Subsequently, on or about November 19, 1975, a formal written agreement was drafted by Cargill and sent to Fields for approval. Fields Elton Kessler, then presi-

dent of Fields Engineering,[1] executed the contract and returned it to Cargill. There is no evidence in the record, however, that the contract was ever executed by Cargill.[2]

The contract provided, among other items, that work on the project must be commenced by Fields, the contractor, on or before December 1, 1975, and completed no later than August 1, 1976. Time was said to be of the essence of the agreement. The contract further stated that Cargill must pay Fields "for the construction and work to be performed and materials to be furnished" the sum of cost plus 15%, with the total amount in no event to exceed $270,-000. Additionally, the contract gave Cargill the authority to "add to or otherwise alter the construction and work to be performed," subject, however, to modification of the contract price by written agreement between the parties prior to the commencement of any changes.

A number of changes were made in the project at the request of Cargill, but without any express modification of the contract price.[3] Fields made these changes both before and after the deadline of August 1, 1976. Monthly payment invoices were sent to Cargill that reflected the fact that total billing had greatly exceeded the $270,000 cost limitation of the contract. Fields claims that Cargill raised no objections to the billings. Although assurances had been given to Cargill by Fields's representative, George Carter, that the project would be completed on time and within the cost limit,

Fields continued working on the conveyor system until December 16, 1976. At that time, Cargill ordered Fields to leave the Clarion job site and thereafter hired the Jarvis Construction Company to finish the project, which it did in November, 1977.[4]

On February 2, 1978, Fields filed this action seeking $232,612.10 [5] in damages for breach of contract.[6] The District Court, however, found that Fields had breached the written contract by failing to complete the construction work properly by the August 1 deadline and by exceeding the cost ceiling of $270,000.00. It further found that Cargill had been damaged in the amount of $37,885.00 paid to Jarvis Construction Company to finish the conveyor-belt system and $136,000.00 in two seasons' lost profits as a result of delay in completion. Fields was given credit for the amount Cargill owed for work done under the contract and for additional work performed at Cargill's request. This credit was found to be $56,306.38, reducing Cargill's recovery to $117,578.62.

Fields urges three points for reversal: that it was unlawfully denied a trial by jury in this action at law; that the District Court's findings of fact are insufficient and clearly erroneous; and that the District Court failed to rule on any of plaintiff Fields's evidentiary objections. In the main, we reject these arguments. We do hold, however, that the award for lost profits was erroneous in part, and the judgment against Fields will be reduced accordingly.

---

1. Mr. Kessler died on April 5, 1978. His wife, Sammie, who was then vice-president and secretary-treasurer of the company, became president upon his death.

2. Keith Nesseth, the Eastern Regional Superintendent for Cargill, testified that the original contract and several copies were in a briefcase which was stolen from his parked car. He testified that he had not seen a completely executed copy of the contract, although he noted that Cargill's normal procedure was to have a contract and two copies executed by its officers before sending a copy to the other party.

3. Fields characterizes many of these changes as "extras outside of the scope of the original proposal" and therefore an additional expense not limited by the contract cost ceiling. As will

be seen below, the District Court did make an allowance to Fields for "extras."

4. The overhead conveyor-belt system was not in actual operation, however, until the middle of 1978. It was not completed in time for the 1977 harvest period.

5. This amount represents the difference between Fields's total cost of construction (plus 15%) for the period ending on December 16, 1976, and the sum actually paid by Cargill. These figures are $488,660.63 and $256,048.53, respectively.

6. In its amended and substituted complaint, Fields alleged, alternatively, a "contract by estoppel," an oral contract, and recovery under the theory of quantum meruit.

## I. Jury Trial

■ Fields contends that its right to a trial by jury was violated when the case was transferred to a non-jury docket without its consent entered on the record, as required by Fed.R.Civ.P. 39(a). This contention has only its audacity to commend it. Although Fields filed a demand for a jury trial on two separate occasions prior to trial, the record indicates that at the pretrial conference Fields, through its counsel, orally agreed to trial before the court. Under Rule 39(a), the parties or their attorneys may stipulate that trial will be without a jury, even though a jury trial has been previously properly demanded. All parties must consent to the stipulation, which must either be made in a writing filed with the court or, as in the present case, by oral stipulation made in open court and somehow reflected in the record. Wright & Miller, Federal Practice and Procedure: Civil § 2332; see *Collins v. Government of the Virgin Islands,* 366 F.2d 279, 286 (3d Cir. 1966), *cert. denied,* 386 U.S. 958, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967). The pretrial order in this case, to which Fields did not object, recites the waiver of jury trial by the parties during pretrial conference. This is a sufficient entry in the record to satisfy the requirements of Fed.R.Civ.P. 39(a). See *General Business Services, Inc. v. Fletcher,* 435 F.2d 863 (4th Cir. 1970). It is immaterial that the pretrial conference itself was not on the record. The agreement to waive a jury, made at this conference, was recorded in the pretrial order.

## II. The Findings of Fact

Fields asserts that the District Court erred in rendering judgment for Cargill for breach of contract and failed to make sufficient findings of fact and conclusions of law on Fields's own theories of recovery. We examine the merits of each specific point raised in turn.

### A. Contract

■ The District Court found that the parties had entered into a written contract for the construction of an overhead convey-or-belt system and that appellant Fields had breached the contract by failing to complete the construction work properly by August 1, 1976, and by exceeding the cost ceiling of $270,000. Under Fed.R.Civ.P. 52(a), our review is limited, and the findings of the trial court will not be set aside unless clearly erroneous and unsupported by substantial evidence. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 131 (8th Cir. 1979). After review of the evidence in the record, we are unable to say that the District Court's findings are clearly erroneous.

■ There is no question that there was a written agreement between Fields and Cargill. Further, the contract is valid and binding under Iowa law, which governs here, despite the absence of the signature of one of the parties. *Service Employees International, Local No. 55 v. Cedar Rapids Community School District,* 222 N.W.2d 403, 407 (Iowa 1974). The contract was based on Cargill's standard form, and both sides orally agreed to modifications that were embodied in the written instrument signed by Fields. This instrument was acted on by the parties. It is therefore immaterial that Cargill apparently never signed the final document, and the District Court properly so held. That Fields did not meet the contract deadline and exceeded the cost limitation is also clear. See Restatement, Contracts § 314 (1932). Whether Cargill waived the breach, however, is a different question as to which the District Court made no express finding.

Fields continued working on the overhead conveyor belt for more than four months past the August 1 contract deadline. During that period monthly payment invoices were sent to Cargill. Although Cargill never paid any of those bills, Mrs. Sammie Kessler testified that Fields was told that Cargill "had to get additional funds allocated for additional work." Fields infers that Cargill tacitly approved its continued work, and now should pay for it.

■ An innocent party may waive a breach of contract and continue perform-

ance on his part. *S.S. Silberblatt, Inc. v. Seaboard Surety Co.*, 417 F.2d 1043, 1054 (8th Cir. 1969). As noted above, however, Cargill did not pay Fields for those months worked beyond the contract deadline. This absence of payment apparently signified to the District Court that Cargill chose not to continue performing its obligation under the contract and therefore did not waive Fields's clear breaches. In addition, Mr. Nesseth testified for Cargill that he expressly warned Mr. Kessler not to exceed the $270,000 limit. The District Court apparently gave little weight to the testimony of Mrs. Kessler, and we see no reason to set aside that assessment. The trial court had the opportunity to view the demeanor and credibility of the witness. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman, supra*, 593 F.2d at 131–32. Our task would be easier if the District Court had made fuller and more explicit findings, but we cannot say, after reviewing the record, that we are definitely and firmly convinced that the District Court was mistaken in implicitly finding that Fields failed to sustain its burden of proof on the affirmative defense of waiver.

### B. Damages

The District Court found that Cargill had been damaged by Fields's breach of contract in the amount of $37,885.00, the sum paid to have the conveyor-belt system completed, and $136,000.00 as lost profits resulting from the delay in completion of the work. On the basis of the evidence, we hold that the District Court did not err in assessing damages in the amount Cargill paid to Jarvis Construction to finish the construction project; we also hold, however, that the amount of lost profits allowed by the trial court was excessive.

■ The District Court relied primarily on billings submitted to Cargill by Jarvis Construction in computing the $37,885 award. There was a factual dispute over whether all of the reflected costs related to work Fields had begun. The trial court apparently found the total sum of the billings to be an accurate representation of the amount Cargill expended in completing the conveyor-belt system. All that is required is that an adequate basis for the award be found in the record before us. *Allen v. W.H.O. Alfalfa Milling Co.*, 272 F.2d 98, 100 (10th Cir. 1959). We conclude, therefore, that the damage award for costs Cargill incurred in having the construction project finished is not clearly erroneous.

■ The award of lost profits presents a different problem. Under Iowa law, lost profits are recoverable provided that (1) there is proof that some loss occurred, (2) such loss flowed directly from the breach and was foreseeable, and (3) there is proof of a rational basis from which the amount can be inferred or approximated. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 640 (8th Cir. 1975).

Cargill presented evidence that tended to show that additional revenues were lost because the overhead conveyor-belt system was not placed in operation until after the 1977 harvest period. Further, the testimony of its expert witness as to projected increases in revenues and cost savings that might be realized from the conveyor system provided a rational basis from which the amount of the loss could be approximated.[7] See *Lakota Girl Scout Council, supra*, 519 F.2d at 642. Evidence was lacking, however, to show with reasonable certainty that all of the loss flowed directly from the breach of contract and was foreseeable.

It is clear that the failure of Fields to complete the conveyor-belt system by the contract deadline of August 1, 1976, resulted in loss of profits from the inability of Cargill to utilize the system during the 1976 harvest period. Fields was subsequently ordered from the Clarion job site on December 16, 1976, and Jarvis Construction was

---

7. Burnis Wilhelm, assistant general manager of the produce marketing department at Cargill, provided the projection of increased revenues based on the efficiency of the overhead convey-or-belt system in moving grain from both directions, enabling the facility to handle 300,000 bushels of additional grain.

brought in to finish the project. Jarvis did not complete the system until November, 1977. The record does not explain why it was reasonable for Jarvis to take almost a year to perform less than $38,000 worth of work, a relatively small percentage of the total contract price of $270,000. The evidence does not support a finding that such a long delay was foreseeable by the parties at the time of the making of the written agreement, and foreseeability is an important element in lost-profits cases, see *De-Waay v. Muhr*, 160 N.W.2d 454, 459 (Iowa 1968).

■ We conclude, therefore, that the award for lost profits, to the extent that it includes putative profits for two harvest seasons (1976 and 1977), is not supported by the record. The evidence supports only an award of $68,000 in lost profits, the amount that Cargill would have made had completion of the belt been delayed for only one season.

### C. Sufficiency of Findings

■ In preparing his findings, the trial judge is not required to assert the negative of each rejected argument as well as the affirmative of those he finds to be correct, see *Carr v. Yokohama Specie Bank*, 200 F.2d 251 (9th Cir. 1953); nor need he make findings on a particular issue if other issues are decisive of the case, *Immigration and Naturalization Service v. Bagamasbad*, 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976); Wright & Miller, Federal Practice and Procedure: Civil § 2579. Here, it was unnecessary for the District Court to make a finding on each of plaintiff's theories of recovery when its ultimate findings were dispositive of the issues. The court found that Fields breached the contract. This finding relieved the court of any need to make a finding on Fields's contention that it possessed a claim based on the theory of quantum meruit.[8] We cannot say the District Court's findings and conclusions are so

deficient as to be reversible solely because of their brevity.

### III. Evidentiary Objections

■ Fields finally argues that the District Court erred by not ruling on a single objection in the record and thereby ostensibly admitting into evidence all statements and documents offered. We cannot agree. This court has held that "[i]n the trial of a case to the court without a jury, the presumption is that the trial court considered only competent evidence and disregarded all evidence which was incompetent." *Montgomery Ward & Co. v. Steele*, 352 F.2d 822, 830 (8th Cir. 1965). Our attitude on this issue is further exemplified by *Builders Steel Co. v. Commissioner of Internal Revenue*, 179 F.2d 377, 379 (8th Cir. 1950), in which we stated:

> An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.

No such showing has been made here.

### IV. Conclusion

We conclude that the findings made by the District Court, with the exception of the award of lost profits for the second harvest season, are supported by the facts in the record. We therefore must enter a remittitur in the amount of $68,000.00, or half the $136,000.00 awarded for lost profits. If Cargill accepts a reduction in this amount, making the judgment recovered by it $49,578.62, instead of $117,578.62, the judgment of the District Court will stand affirmed, as so modified. Otherwise, the judgment, insofar as it awarded Cargill any amount for lost profits, will be reversed, and the cause remanded for a new trial on the lost-profits question.

It is so ordered.

---

8. The District Court did give Fields credit for extra work done at Cargill's request. The amount allowed usually is the reasonable value of the services and materials furnished. See *S.*

*Hanson Lumber Co. v. De Moss*, 253 Iowa 204, 111 N.W.2d 681, 684 (Iowa 1961). There is evidence in the record to support the amounts of credit allowed by the trial court.