821 F.2d 1317
 Bankr. L. Rep. P 71,860, 3 UCC Rep.Serv.2d 1700
Thomas E. WEGNER, Appellee,
v.
Cecelia GRUNEWALDT, Trustee; Valley National Bank, a
National Banking Corporation; and The South
Dakota Department of Revenue, Appellants.
 No. 86-5224.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 9, 1987.
Decided June 29, 1987.
Rehearing Denied July 30, 1987.
 
 Edward J. Leahy, Sioux Falls, S.D., for appellants.
 Michael B. Crew, Sioux Falls, S.D., for appellee.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and HANSON,* Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Valley National Bank appeals from the district court's[1] judgment reversing the bankruptcy court's order and declaring Thomas E. Wegner's security interest superior to Valley National's security interest in a liquor license that BLT, Ltd., initially owned and later sold to BLT II, Ltd. Valley National argues that the district court erroneously held that Wegner did not relinquish his security interest under section 9-306(2) of South Dakota's Uniform Commercial Code because his consent to sell the liquor license was conditioned upon retention of his security interest. S.D. Codified Laws Ann. Sec. 57A-9-306(2) (Supp.1986). We agree with the district court that under South Dakota law a secured party may retain a security interest by conditioning the authorization to sell the secured property upon the continuance of the security interest. The bankruptcy court's order does not decide, however, the factual question of whether Wegner conditioned his authorization upon the retention of his security interest. We thus remand this action to the bankruptcy court for this factual determination. Valley National also argues that the district court erred in holding that Wegner's security interest should not be equitably subordinated to Valley National's. We affirm this portion of the district court's judgment.
 
 
 2
 Robert Larson and Thomas Wegner were the sole shareholders of BLT, Ltd., a corporation formed in 1975 for the purpose of operating a restaurant in Sioux Falls, South Dakota. Larson owned 250 shares of BLT stock and served as a BLT director, its president, and its manager. Wegner owned 125 shares and served as a BLT director, its vice-president, and its secretary.
 
 
 3
 In the fall of 1981, Larson approached Wegner about investing in a new business venture, a bar and dance hall in Sioux Falls, South Dakota. Larson proposed that BLT sell its retail liquor license to the new corporation to be formed for the new business venture. Wegner was not interested in the new business venture. He and Larson agreed that it would be best for Wegner to redeem his BLT stock since Larson desired to sell the liquor license owned by BLT to the new corporation. Larson then formed this new corporation, BLT II, Ltd., and became its sole stockholder.
 
 
 4
 Larson and Wegner agreed to redeem Wegner's BLT stock for $40,000. Legal counsel prepared a stock redemption agreement which Larson, acting as president of BLT, and Wegner executed around February 1, 1982. That same day BLT paid Wegner $10,000 in partial payment for the stock redemption.
 
 
 5
 When they executed the redemption agreement, BLT and Wegner also signed a security agreement granting Wegner a security interest in all of BLT's assets, including BLT's retail liquor license. The parties also signed a financing statement pertaining to the security agreement. Wegner filed this financing statement with the South Dakota Secretary of State on March 3, 1982.
 
 
 6
 Previously, in December 1981 or January 1982, Larson had approached Valley National regarding financing for the business venture contemplated for BLT II. Wegner knew of these discussions. BLT had an established banking relationship with Valley National, and Wegner anticipated that the bank would be BLT II's financing source for its business venture. Furthermore, Wegner anticipated that the bank would obtain a security interest in all of BLT II's assets, including the liquor license to be transferred from BLT to BLT II.
 
 
 7
 In late February 1982, Valley National prepared the documents for a loan to BLT and BLT II, with a security interest in specified assets of BLT II, including its retail liquor license. The bank notified Larson during the last week of February 1982 that the loan documents were ready for execution. A bank employee also searched the state records at this time and found no filed financing statement claiming a security interest in the liquor license then owned by BLT. A few days later, on March 3, 1982, Wegner filed a financing statement claiming a security interest in BLT's liquor license. The next day, March 4, Larson, acting on behalf of BLT and BLT II, and the bank signed the loan agreement, the security agreement, and the financing statements. The bank was unaware of Wegner's previously filed financing statement when it filed its financing statements on March 8, claiming a security interest in the liquor license. On March 22, 1982, BLT sold its retail liquor license to BLT II for $60,000.
 
 
 8
 BLT and BLT II filed Chapter 11 bankruptcy proceedings on January 1, 1983. Pursuant to the application of the trustee of the BLT II estate, the bankruptcy court entered an order on August 6, 1984, confirming the trustee's sale of BLT II's liquor license for $75,000, directing the transfer of that liquor license free and clear of all liens, and ordering that the liens claimed by Valley National and Wegner on the liquor license attach to the $75,000 in proceeds. The dispute before the bankruptcy court concerned whether Valley National or Wegner has priority to these proceeds. The bankruptcy court ruled for Valley National. Citing section 9-306 of South Dakota's U.C.C., the court first concluded that "because the transfer was authorized and consented to by Wegner," the liquor license was transferred to BLT II free of the security interest given by BLT to Wegner. Wegner v. Grunewaldt (In re BLT II, Ltd.), Case No. 483-00002, Adv. No. 485-0005, slip op. at 11 (Bankr.S.D. July 22, 1985). The court also ruled that because Wegner filed his financing statement one day before Valley National executed its security agreement and financing statement with BLT and BLT II and because Wegner, an officer and director of BLT, never informed Valley National of his security interest, principles of equitable subordination dictate that Wegner's interest be subordinated to Valley National's. Id. at 12-13.
 
 
 9
 The district court rejected both of these rulings. First, it concluded that Wegner premised his authorization to sell the liquor license on the condition that he retain his security interest, and under section 9-306, such conditional authorization allows the security interest to continue in the transferred asset. Wegner v. Grunewaldt, Civ. No. 85-4268, slip op. at 6-7 (D.S.D. May 6, 1986). Second, the court concluded as a matter of law that Wegner's interest cannot be equitably subordinated merely on the basis of the bankruptcy court's factual findings that Wegner filed his financing statement one day before the bank obtained a security interest from BLT II and that Wegner failed to inform the bank of his interest. Id. at 7-10.
 
 I.
 
 10
 When a district court reviews a bankruptcy court's judgment, it acts as an appellate court. As with most appellate proceedings, the district court may review the bankruptcy court's legal conclusions de novo, but the bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Bankr.R. 8013; see, e.g., In re Hunter, 771 F.2d 1126, 1129 n. 3 (8th Cir.1985); In re Martin, 761 F.2d 472, 474 (8th Cir.1985); see also Bankr.R. 7052 (Federal Rule of Civil Procedure 52 applies in adversary bankruptcy proceedings). Furthermore, the district court may not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination. E.g., In re Walker, 726 F.2d 452, 454-55 (8th Cir.1984); In re Neis, 723 F.2d 584, 588-90 (7th Cir.1983). In In re Walker, the district court concluded that a debtor-principal knew or should have known of his agent's fraudulent activities. The district court made this finding even though this factual question "was not expressly decided by the bankruptcy court," and the evidence on the issue was "conflicting." Id. at 454. In response to the argument that the district court acted improperly, we concluded:
 
 
 11
 Since the record evidence is subject to differing interpretations and the findings of the bankruptcy court, as indicated, are not presently acceptable as decisive of the basic issue, we believe that the district court erred in finding a want of showing that [the principal] knew, or should have known, of his [agent's] fraud. The question is one of fact to be decided in the first instance by the bankruptcy court, and we find a remand to the bankruptcy court for further findings of fact and conclusions of law is required.
 
 
 12
 Id. at 454-55.
 
 
 13
 Of course, we too may not make an independent factual finding when the bankruptcy court's decision is silent or ambiguous as to a crucial factual issue. Id. As the second court of review, however, we review the district court's factual and legal conclusions entirely on a de novo basis. In essence, we conduct an independent review of the bankruptcy court's judgment, asking whether the bankruptcy court's legal conclusions are correct and whether its factual findings are clearly erroneous. See, e.g., Clay v. Traders Bank, 708 F.2d 1347, 1350-51 (8th Cir.1983); In re Burley, 738 F.2d 981, 986 (9th Cir.1984). We review Valley National's contentions based on these standards of review.
 
 II.
 
 14
 Section 9-306(2) of South Dakota's U.C.C. states:
 
 
 15
 Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
 
 
 16
 S.D. Codified Laws Ann. Sec. 57A-9-306(2) (Supp.1986) (emphasis added).
 
 
 17
 The issue is whether a secured party can retain his security interest by authorizing the sale of the secured property but conditioning this authorization on the retention of his security interest in the property. Valley National argues that an authorization to sell is coterminous with a transfer free of the security interest. Therefore, a secured party cannot authorize a disposition, yet condition the authorization on retaining his property interest. An authorization to sell is required in order for a security interest to be discontinued under section 9-306(2). But this does not mean when authorization is given, a debtor and a secured party cannot freely attach conditions to their agreement so as to allow the debtor to transfer the secured property in compliance with the security agreement while assuring that the secured party retains his interest in the secured property.
 
 
 18
 In determining whether a disposition is "authorized" under section 9-306(2), the South Dakota Supreme Court looks to the intentions of the parties to the agreement--the debtor and the secured creditor. Aberdeen Prod. Credit Ass'n v. Redfield Livestock Auction, Inc., 379 N.W.2d 829 (S.D.1985). If a court refused to give effect to the parties' agreement that the secured party's security interest would continue in sold property, this "would emasculate, if not totally negate, the purposes and objectives of the parties." Id. at 831. Yet, if we accepted the bank's argument, we would be forced to inconsistently conclude that when a secured party and a debtor agree that the debtor may sell the secured property and also agree that the security interest shall continue in the sold property, the first agreement is valid, the second is meaningless, and, despite the parties' manifestations, the secured party loses his property interest in the sold property. Not only would such an interpretation ignore the parties' intentions, it would also be at odds with section 9-306(2)'s policy of extending, not limiting, the protections Article 9 affords a secured party. Furthermore, the bank's construction would impair the transferability of secured property. Secured creditors unable to condition authorization on the retention of their security interest would likely refuse to authorize a sale of the secured property. This would frustrate both financing and sales transactions. We do not believe a South Dakota court would construe section 9-306(2) in a manner inconsistent with its general purpose and contrary to the Uniform Commercial Code's policy of encouraging and facilitating commercial transactions by allowing parties to freely contract under uniform laws. S.D. Codified Laws Ann. Sec. 57A-1-102(2) (1980); U.C.C. Sec. 1-102 Official Comment ("The Act should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question * * *.").
 
 
 19
 As the South Dakota Supreme Court has implied, a secured party's consent to the sale of secured property is not coextensive in scope with a transfer free of a security interest. See Aberdeen Prod. Credit Ass'n, 379 N.W.2d at 831 ("However, we do not characterize these statements or documents as constituting consent to the particular sales made by Bellman Farms through the individual sale barns during 1981 or as a waiver of PCA's security interest in the cattle or proceeds."). To determine whether a disposition is "authorized" under section 9-306(2), a court must look to the entire agreement between the secured party and the debtor. And if the secured party and the debtor agree that the debtor can sell the secured property but the secured party will retain his security interest in the sold property, then the entirety of that agreement must be given effect, and the disposition is not "authorized" under section 9-306(2).
 
 
 20
 Having concluded that Wegner could have maintained his security interest in the liquor license if he conditioned his authorization to sell the license on retention of his security interest, we are faced with a bankruptcy court opinion that is inconclusive as to this crucial factual issue.
 
 
 21
 A trial court's factual findings are adequate if they afford a reviewing court "a clear understanding of the basis of the trial court's decision." Lynch Corp. v. MII Liquidating Co., 717 F.2d 1184, 1187 (8th Cir.1983); see also Stanley v. Henderson, 597 F.2d 651, 654 (8th Cir.1979). In documenting his findings, a trial judge "is not required to assert the negative of each rejected argument as well as the affirmative of those he finds to be correct." Fields Eng'g & Equip., Inc. v. Cargill, Inc., 651 F.2d 589, 594 (8th Cir.1981). The court "only must formulate findings on the ultimate facts necessary to reach a decision," and a reviewing court can conclude that a necessary finding exists because it is implicit in and reinforced by other factual findings of the trial court. Allied Van Lines, Inc. v. Small Business Admin., 667 F.2d 751, 753 (8th Cir.1982).
 
 
 22
 The bankruptcy court made the following factual finding:
 
 
 23
 At the time Wegner executed the stock redemption agreement (Exhibit 5) he was aware of the intended sale of the liquor license by BLT to BLT II. Wegner entered into the stock redemption agreement with the understanding that the liquor license would be sold by BLT to BLT II. Wegner authorized and consented to the sale of the liquor license from BLT to BLT II.
 
 
 24
 Wegner v. Grunewaldt (In re BLT II, Ltd.), slip op. at 8.
 
 
 25
 Based on this factual finding, the bankruptcy court concluded that "[p]ursuant to [section 9-306(2) ], on March 22, 1982, the liquor license was transferred by BLT to BLT II free of the security interest given by BLT to Wegner because the transfer was authorized and consented to by Wegner." Id. at 11.
 
 
 26
 The bankruptcy court's factual findings and legal conclusions simply do not state whether Wegner's authorization was conditional or unconditional. There is circumstantial factual support for the finding that Wegner's authorization was conditional. When Wegner created his security interest, he was fully aware of an imminent transfer of the license from BLT to BLT II. Additionally, BLT transferred the license subject to the understanding that BLT had granted Wegner a security interest in the license and that "[BLT II's] purchase of the liquor license shall be subject to the security interest of * * * Tom Wegner." Ex. 8, at 2 (installment purchase contract between BLT and BLT II). There is also circumstantial factual support, however, for the finding that Wegner's authorization was unconditional. By finding that "Wegner authorized and consented to the sale," the bankruptcy court used the legal term at issue--section 9-306(2)'s "authorized"--to make a purported factual finding; yet this finding does not answer the question of whether Wegner conditioned his consent on the retention of his security interest.
 
 
 27
 The district court, however, filled the void by making its own finding that Wegner's consent was conditional. We do not believe this is an issue that could have been determined as a matter of law. It is a factual question that should have been decided by the bankruptcy court, and the district court exceeded its authority in resolving the issue. Because this factual question is outcome determinative, we must remand this action to the bankruptcy court with instructions to conduct whatever proceedings are appropriate to make a factual finding on this issue and enter judgment accordingly. In re Walker, supra.
 
 III.
 
 28
 Finally, we consider Valley National's argument that the district court erred in setting aside the bankruptcy court's order that Wegner's perfected security interest should be equitably subordinated to Valley National's. Valley National argues that the bankruptcy court properly exercised its broad equitable powers in subordinating Wegner's interest, and the district court improperly substituted its own findings in place of the bankruptcy court's. We hold that the district court correctly ruled that the bankruptcy court's conclusions regarding inequitable and fraudulent conduct are not supported by its factual findings. The district court also held that these factual findings supporting the bankruptcy court's equitable subordination ruling were clearly erroneous. We view this holding invoking the clearly erroneous rule as surplusage that we need not address.[2]
 
 
 29
 To the extent the bankruptcy court's factual findings relate to the equitable subordination issue, the bankruptcy court found that Wegner was a director and officer of BLT, that he knew BLT had an established banking relationship with Valley National, that he anticipated that Valley National would provide financing to BLT II and take a security interest in all of BLT II's assets, and that Wegner filed his financing statement over one month after taking a security interest in the liquor license and one day before the bank took a security interest in BLT II's assets. Based apparently on these facts, the bankruptcy court ruled that:
 
 
 30
 Wegner's and Larson's actions in delaying the perfection of Wegner's security interest from BLT until March 3, 1982, and delaying Larson's execution of the security interests from BLT and BLT II to Valley National until March 4, 1982, were calculated to prevent Valley National from acquiring knowledge of the security interest given by BLT to Wegner in the liquor license and such conduct is sufficient to require any security interest claimed by Wegner or BLT to be found subject to and inferior to the security interest of Valley National in the liquor license.
 
 
 31
 Slip op. at 12.
 
 
 32
 The district court concluded that the bankruptcy court's equitable subordination holding was based only on its factual finding that Wegner filed his financing statement a month after entering his security agreement with BLT. Finding nothing in the record to suggest that Wegner intended to or knew of any scheme to deceive Valley National, the court ruled that the bankruptcy court's equitable subordination ruling was not supported by the evidence.
 
 
 33
 The doctrine of equitable subordination, now codified in 11 U.S.C. Sec. 510(c), may be applied only if, among other requirements, the claimant has engaged in fraudulent or inequitable activity. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); see, e.g., Farmers Bank v. Julian, 383 F.2d 314, 322-23 (8th Cir.), cert. denied, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967); In re Kansas city Journal-Post Co., 144 F.2d 791 (8th Cir.1944). In the absence of specific findings by the bankruptcy court as to the evidence supporting the presence of fraudulent or inequitable activity, a claim for equitable subordination will not stand. In re Missionary Baptist Found. of Am., 712 F.2d 206, 212-13 (5th Cir.1983); In re Mobile Steel Co., 563 F.2d 692, 704-06 (5th Cir.1977). Accepting as valid the bankruptcy court's factual findings, we are convinced that the district court correctly ruled that the evidence is insufficient to support the conclusion that Wegner engaged in fraudulent or inequitable conduct. Valley National obtained its security interest solely in the property of BLT II. The only parties to this agreement were BLT II and the bank. Wegner was never affiliated with BLT II in any capacity. On March 3, 1982, Wegner filed a financing statement, giving the bank constructive notice that he claimed a security interest in the liquor license. The bank failed to take the steps necessary to obtain actual notice of this fact, and we cannot agree that Wegner, a creditor unaffiliated with the bank's financing transaction, should be burdened with the duty of personally notifying the bank of the security interest he claimed in his previously filed financing statement. Wegner had nothing to personally gain with respect to the liquor license by filing his financing statement on March 3 instead of on an earlier date. We agree with the district court that there is insufficient evidence to support the finding that Wegner's actions constitute fraudulent or inequitable conduct.
 
 
 34
 In conclusion, we affirm the district court's order that Wegner's claim should not be equitably subordinated to Valley National's. We also conclude that under section 9-306(2) of South Dakota's Uniform Commercial Code a secured party may retain his security interest in sold property by conditioning his authorization to sell on the retention of his security interest. We remand this action to the bankruptcy court for the factual determination as to whether Wegner attached such a condition when he authorized BLT to sell its liquor license.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable John B. Jones, United States District Judge for the District of South Dakota
 
 
 [2]
 A reviewing court should reject a lower court's factual finding as clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Therefore, a usual predicate to a clearly erroneous analysis is a conclusion that there is some evidence to support the factual finding in issue. Because we agree with the district court that the bankruptcy court's legal conclusions are not supported by its factual findings, we need not consider whether these findings are clearly erroneous