UNITED STATES of America, Plaintiff,

v.

Joseph J. HRDLICKA and Donald G. Hrdlicka, Defendants.

No. 80–CR–69.

United States District Court, W. D. Wisconsin.

May 11, 1981.

**404**

John A. Franke, Asst. U. S. Atty., Madison, Wis., for plaintiff.

Gerald C. Nichol, Lee, Johnson, Kilkelly & Nichol, James W. Gardner, Lawton & Cates, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, Senior District Judge.

In *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), a United States Magistrate had held an evidentiary hearing on a suppression motion and had recommended findings of fact, the effect of which was to require denial of the motion. Without holding a fresh hearing at which the witnesses testified, the district judge had adopted the recommended findings and had denied the motion to suppress. Six members of the Supreme Court decided that the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), authorized the district judge to proceed in this manner. Five of those six members decided that, so construed, the Act did not violate a defendant's rights under the due process clause of the Fifth Amendment or under Article III, when the district judge accepted the magistrate's credibility-based recommended findings of fact.

I understand *Raddatz* to mean that in a case, like the present, in which the magistrate recommends a finding favorable to a defendant, it is doubtful whether I can reject that finding and adopt a finding favorable to the government, without providing a fresh hearing at which I could evaluate firsthand the credibility of the witnesses. To do so would be to violate a defendant's rights under the due process clause and also to violate the requirements of Article III. On the other hand, if I were to adopt the magistrate's credibility-based findings of fact and to grant the motion to suppress, without a fresh testing of credibility, obviously no due process rights of a defendant would be violated and the government is afforded no protection by the due process clause. However, the government as well as a defendant enjoys the assurance embodied in Article III that certain judicial functions will be performed only by Article III judges and that those functions will be performed only in a certain manner. In *Raddatz*, all members of the Court agree that when a party objects to findings of fact recommended by a magistrate, as the government has objected here, the district judge must engage in an active *de novo* determination of those factual questions if their resolution is necessary to a decision.

In the present case, the magistrate has recommended a finding that the investigator, Lenckus, obtained by express deceit the consent of defendant Joseph Hrdlicka to a search of certain records.

I understand defendants to contend that a resolution of the credibility issue is not essential to a grant of the motion to suppress. Suppression must be granted, they seem to contend, on the undisputed evidence that Lenckus, an investigator of

criminal conduct, approached defendant Joseph Hrdlicka for permission to examine certain records; that the approach was made because government auditors of a hay transportation program had earlier discovered an apparent submission by certain Hrdlicka entities of the same claim for financial assistance on two occasions; that Lenckus was engaged consciously in an investigation into a possible criminal conspiracy by Joseph Hrdlicka and one or more other persons; that Lenckus informed Joseph Hrdlicka that Lenckus was an investigator in the office of the Inspector General for Investigation for the United States Department of Agriculture; that Lenckus informed Joseph Hrdlicka that the purpose of Lenckus' visit was to investigate discrepancies or irregularities in the hay transportation program in the area; and that Joseph Hrdlicka then consented to the request for permission to search the business records.

To grant suppression on these undisputed facts would be to hold that it is fatally deceitful for an investigator simply to refrain from informing the suspect that the requested search is aimed at the suspect. Although I do not reject such a rule, neither can I embrace it, without considerably more exploration of its implications either by the magistrate or by me. It is not a rule upon which the magistrate's recommendation rests.

I proceed on the basis that in deciding whether to enter the magistrate's recommended order to suppress, it is necessary for me to acknowledge and resolve a credibility issue, and to make a *de novo* determination of the proposed findings that:

> Lenckus specifically informed Joseph Hrdlicka that "no audit or investigation of Hrdlicka businesses was contemplated and that the investigation did not pertain to the Hrdlickas' farms . . . ."
>
> "Joseph Hrdlicka's consent to Agent Lenckus's inspections was not voluntarily given but rather was induced and obtained by the agent's misrepresentations, both active and passive." [1]

I have attempted to fulfil this obligation by reading carefully a complete transcript of the evidentiary proceeding before the magistrate.

Lenckus' testimony is that he had stated to defendant Joseph Hrdlicka that Lenckus desired to inspect the records because Lenckus was engaged in investigating and checking into discrepancies or irregularities in the program in the area. Joseph Hrdlicka testified: Lenckus had stated to him that the inspection of the records would not be as to anything involving the defendants themselves and that there was no reflection or audit on defendants' companies. David A. Jenneman testified: at the time of the critical conversation between Lenckus and Joseph Hrdlicka, Jenneman was an employee of defendants; Jenneman was present; and Jenneman heard Lenckus say that the investigation did not have to do with any of Joseph Hrdlicka's companies, that it had to do with just other various farmers.

Lenckus' testimony constituted the government's case-in-chief at the suppression hearing. It was silent as to whether Joseph Hrdlicka had asked Lenckus whether he or his brothers were targets of the requested search. Lenckus was called by the government in rebuttal. Neither counsel for the government nor defense counsel then asked whether Joseph Hrdlicka had raised any questions prior to giving consent, and Lenckus volunteered no such testimony. Lenckus denied that he had stated to Joseph Hrdlicka at anytime that Joseph Hrdlicka's companies were not under investigation in any way or that Joseph Hrdlicka himself was not under investigation in any way.

Joseph Hrdlicka testified that he gave his consent to the search only after Lenckus had given the assurances that the Hrdlickas' conduct was not to be the subject of the search.

---

**1.** The government has objected also to a proposed finding that in November, 1977, when consent was given, the Hrdlickas were the exclusive targets of the investigation. Although the evidence clearly supports that finding, the finding is not essential to decision on suppression.

Each of the three witnesses, Lenckus, Joseph Hrdlicka, and Jenneman, had reason to falsify in his testimony at the suppression hearing: Lenckus, to avoid personal responsibility for an abortion of this prosecution; defendant Joseph Hrdlicka, to enhance the odds for such an abortion; Jenneman, to ingratiate himself with Joseph Hrdlicka, by whose corporation Jenneman was again employed as of the time of the hearing before the magistrate. However, it is highly credible that before Joseph Hrdlicka consented to an inspection of defendants' records, he would inquire, as he said he did, whether the inspection would be a prelude to possible criminal trouble for him and his brothers. His uncontradicted testimony that he made the inquiry of Lenckus is credible. I accept it as true. It is not credible that, having raised the question, Joseph Hrdlicka would have been content with the carefully phrased generality that Lenckus was engaged in investigating and checking into discrepancies or irregularities in the program in the area. I reject this proposition.

These strongly practical considerations, as well as the magistrate's opportunity to hear the witnesses and to observe their demeanor, support the magistrate's recommendation that I find that:

(1) Lenckus specifically informed Joseph Hrdlicka that "no audit or investigation of the Hrdlicka businesses was contemplated and that the investigation did not pertain to the Hrdlickas' farms . . . ."

(2) "Joseph Hrdlicka's consent to Agent Lenckus's inspections was not voluntarily given but rather was induced and obtained by the agent's misrepresentations, both active and passive."

The government has moved that I reject the proposed findings of fact just stated (and that stated in footnote 1, above) and the proposed conclusions of law and that I deny defendants' motion to suppress. Alternatively, the government has moved that I hold additional hearings and inquiry on the voluntariness of the consent, or recommit to the magistrate for further proceedings and consideration on the voluntariness of the consent. For reasons stated from the bench on May 8, 1981, I deny the latter alternative motion. For reasons set forth in this opinion, I deny the former alternative motion.

I adopt as my own the findings of fact recommended by the magistrate, and the conclusions of law recommended by him in his report and recommendation dated April 17, 1981.

It is ordered that defendants' motion is granted and that there will be suppressed as evidence at trial all evidence which, under applicable rules of law, is to be barred because of the involuntariness of Joseph Hrdlicka's consent. The magistrate is directed to conduct appropriate proceedings for the purpose of submitting a recommendation specifying the evidence to be suppressed.

The magistrate is requested to consider promptly whether pretrial procedures and the trial should be rescheduled.

## REPORT AND RECOMMENDATION

WILLIAM L. GANSNER, United States Magistrate.

The present prosecution is based on a 45-count indictment alleging the filing of false and fraudulent claims against the United States for payment and reimbursement of hay transportation expenses under the Hay Transportation Assistance Program (HTAP), in violation of 18 U.S.C. §§ 287 and 2. The defendants are jointly charged in Counts 1–22. Joseph J. Hrdlicka alone is charged in Counts 23–45. The defendants have jointly moved for an order suppressing all evidence obtained as a result of a government agent's inspections of their books and records. These inspections were conducted during the period of November, 1977 through March, 1978. The defendants allege that Joseph J. Hrdlicka's consent to the agent's inspections was not voluntarily given, but rather was obtained by fraud and misrepresentation on the agent's part; the defendants therefore contend that the inspections and gathering of evidence were in violation of the Fourth Amendment.

An evidentiary hearing on the motion has been held before me, and the issues presented have been fully briefed. This Report and Recommendation is now submitted pursuant to 28 U.S.C. § 636(b)(1)(B).

### FINDINGS OF FACT

I make the following proposed findings of fact:

Defendants Joseph and Donald Hrdlicka are brothers. Along with a third brother, Albert, they own and operate the following businesses:

—Hrdlicka Bros. Livestock Sales, Inc., Chippewa Falls, Wisconsin, a business devoted to the buying and selling of livestock and hay;

—Hrdlicka Bros. Enterprises, Inc., Chippewa Falls, Wisconsin, a trucking business engaged in the transport of livestock and farm commodities;

—Hrdlicka Bros. Farm, located near Jim Falls, Wisconsin, an unincorporated farm serving principally as a supplier of livestock for the brothers' cattle sales business; and

—Maple Leaf Dairy Farms, Inc., also located near Jim Falls, Wisconsin, a dairy farm.

In the summer of 1977 an audit of HTAP claims filed in Chippewa County, Wisconsin disclosed that the Hrdlicka Bros. Farm and the Maple Leaf Dairy Farm had apparently filed duplicate claims for payment for the same load of hay. This information led the Regional Director of the U.S. Department of Agriculture's Office of Audit to issue, on August 2, 1977, an official Referral for Investigation to the Department's Office of Investigation. The referral recommended that "Hrdlicka Bros., Chippewa Falls, Wisconsin, trucker-participant . . . be investigated to determine if there was a conspiracy to defraud the Government."[1] The referral was ultimately received by Adam Lenckus, a special agent for the Agriculture Department's Office of Inspector General, which has jurisdiction to conduct both civil and criminal investigations.

On November of 1977 Lenckus came to the Chippewa Falls office of Hrdlicka Bros. Livestock Sales, Inc. and Hrdlicka Bros. Enterprises, Inc., where he met Joseph Hrdlicka. Lenckus introduced himself as a special agent and showed Joseph Hrdlicka his badge and identification card. He stated that he was engaged in an investigation of "discrepancies" or "irregularities" in the local hay program involving farmers who had received hay sold and delivered to them by the Hrdlickas, and he explained that he wished to examine Hrdlicka Bros. records to verify the invoices of the farmers under investigation. Lenckus did not have a warrant authorizing his inspection of records. Joseph Hrdlicka stated to Lenckus that the books and records of the Hrdlicka businesses were in disorder and that he did not want Lenckus to audit or inspect them. Joseph Hrdlicka therefore asked Lenckus if his investigation would involve Hrdlicka businesses. To this question, Lenckus replied that no audit or investigation of Hrdlicka businesses was contemplated and that the investigation did not pertain to the Hrdlickas' farms, but only to other farmers to whom the Hrdlickas had sold and delivered hay.

With these assurances from Lenckus as to the scope and target of his investigation, Joseph Hrdlicka agreed to allow the agent to inspect records maintained at the office, and he instructed his bookkeeper to give Lenckus the invoices of the farmers in whom he was interested. Beginning on that date in November of 1977 and continuing until March of 1978, Lenckus examined and photocopied books and records at the office on approximately 20 different occasions, spending a total of 3–4 weeks' time in the process. The agent's inspections of records ultimately led to his recommendation that an indictment of the defendants be sought. A grand jury investigation was later commenced, and records of Hrdlicka Bros. Livestock Sales, Inc. and the two

---

1. A copy of the Referral for Investigation was admitted at the evidentiary hearing as Defendant's Exhibit 1.

Hrdlicka farms were provided under grand jury subpoenas.

Agent Lenckus's statement to Joseph Hrdlicka at their initial meeting in November of 1977 that the Hrdlicka businesses and farms were not under investigation was untrue. By virtue of the earlier-issued Referral of Investigation, Lenckus was aware in November of 1977 that the two Hrdlicka farms were suspected of having filed duplicate HTAP claims for the same load of hay, and he was further aware that Department of Agriculture auditors had concluded that "Hrdlicka Bros." ought to be investigated to determine if it had been involved in a conspiracy to defraud the government. Indeed, there was no evidence presented at the evidentiary hearing in this case showing that in November of 1977 any local farms other than the Hrdlickas' were suspected of HTAP violations. It therefore appears that the Hrdlickas were at the time the exclusive targets of the investigation.

Lenckus at no time during the course of his five month investigation ever informed Joseph Hrdlicka that he or his farms were suspected of criminal activity or under investigation. Neither did Lenckus ever give "Miranda" warnings to Joseph Hrdlicka, although it was his normal procedure to give such warnings to any subject of a criminal investigation.[2] There was no evidence presented at the evidentiary hearing showing that Lenckus ever advised Joseph Hrdlicka that he had the right to refuse to allow the agent to inspect the Hrdlicka books and records.

It is my finding that in November of 1977 and throughout the five-month course of Agent Lenckus's periodic visits to the Hrdlicka Bros. office, Joseph Hrdlicka believed that he and the Hrdlicka businesses and farms were not under investigation. Considering all of the circumstances sur-

rounding Joseph Hrdlicka's decision in November of 1977 to allow agent Lenckus to inspect Hrdlicka books and records, specifically including Lenckus's failure to inform Joseph Hrdlicka that he or the Hrdlicka farms were suspected of criminal activity, specifically including Lenckus's giving of assurances that the Hrdlicka businesses and farms were not under investigation and specifically including the falsity of those assurances by the agent, it is my further finding that Joseph Hrdlicka's consent to agent Lenckus's inspections was not voluntarily given but rather was induced and obtained by the agent's misrepresentations, both active and passive.

It should be noted that there was no significant controversy between the parties at the evidentiary hearing as to most of the facts upon which I have based my ultimate finding on the question of Joseph Hrdlicka's consent to Lenckus's inspections. For example, both sides were in agreement that agent Lenckus never informed either of the defendants that they and their businesses were suspected of criminal activities.[3] The one area of material factual dispute was whether Lenckus ever affirmatively stated to Joseph Hrdlicka, as the latter testified, that the Hrdlicka businesses were not under investigation. Agent Lenckus testified that he never made such a representation. Joseph Hrdlicka's testimony to the contrary was corroborated by David Jenneman, an employee of Hrdlicka Bros. Enterprises, Inc., who testified that he was present in November of 1977 when Lenckus told Joseph Hrdlicka that the investigation was not concerned with the Hrdlickas, but only with other area farmers to whom the Hrdlickas had sold and delivered hay. I find that the testimony of Joseph Hrdlicka and David Jenneman is more credible in this respect than the testimony of agent

---

**2.** The failure to tell Joseph Hrdlicka that he was a suspect and the absence of "Miranda" warnings both reflected deliberate decisions by Lenckus. The agent testified at the evidentiary hearing that he did not inform Joseph Hrdlicka that he was under investigation because he wanted to inspect the records first. He further testified that he decided not to give "Miranda".

warnings because he was not convinced at the time that Joseph Hrdlicka or the Hrdlicka businesses had engaged in any criminal activity.

**3.** It is clear that agent Lenckus never interviewed Donald Hrdlicka and that the agent's contacts during the five-month investigation were with Joseph Hrdlicka alone.

Lenckus. This finding is based in large measure upon my belief that it was entirely reasonable and likely that Joseph Hrdlicka would have asked Lenckus about the scope and purpose of his investigation, and that Joseph Hrdlicka would not likely have consented to the agent's inspections had he been told that he and the Hrdlicka businesses were targets of the investigation.

## OPINION

■■■■ The warrantless inspection and photocopying of Hrdlicka books and records in this case constituted a search within the meaning of the Fourth Amendment that can be legally justified only upon the basis of a finding that Joseph Hrdlicka voluntarily consented to the search. "[W]hen the subject of a search is not in custody and the state attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). The voluntariness of such consent to a search is a factual question to be determined from the totality of the pertinent circumstances. *Id.* at 248–49, 93 S.Ct. at 2058–59. Where a consent search is challenged, the government has the burden of proving that the consent was "freely and voluntarily given," *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968), and this burden can be successfully discharged only by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177–78, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974).

■■■■ Coercion need not be physical in order to vitiate the voluntariness of consent to a search. Indeed, a government agent's misrepresentation "as to the nature of an investigation can be strong evidence of coercion." *United States v. Mapp*, 561 F.2d 685, 689 (7th Cir. 1977). And it is well-established that the official use of fraud, trickery or misrepresentation to gain con-

sent to a search "naturally undermines the voluntariness of any consent," *United States v. Griffin*, 530 F.2d 739, 743 (7th Cir. 1976), and therefore renders such a search "unreasonable under the Fourth Amendment," *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977).

■■■■ As my proposed findings of fact reflect, it is my judgment that the government has failed in this case to successfully discharge its burden of proving by a preponderance of the evidence that Joseph Hrdlicka voluntarily and freely consented to the search of Hrdlicka books and records by agent Lenckus. On the contrary, it is my view that the preponderance of the evidence demonstrates that Joseph Hrdlicka's agreement to Lenckus's inspections was induced by the agent's active and passive misrepresentations as to the nature, scope, and targets of his investigation. By passive misrepresentations, I refer to Lenckus's conceded failure to inform Hrdlicka that his farms were suspected of having made false duplicate claims under HTAP, combined with the agent's statement that the investigation was concerned with area farmers to whom the Hrdlickas had sold and delivered hay. This statement may have been accurate to the extent that it would include the Hrdlickas' own two farms, but it was misleading, I believe deliberately, because there was apparently no official suspicion at that time of area farmers other than the Hrdlickas. By active misrepresentations, I refer of course to Lenckus's affirmative and false statement to Joseph Hrdlicka that the investigation was not concerned with the Hrdlicka farms and businesses.

These misrepresentations, combined with the conceded absence of both *"Miranda"* warnings and any advice that Joseph Hrdlicka need not consent to the agent's contemplated inspections, together created a set of circumstances which in my view completely vitiated the voluntariness of Joseph Hrdlicka's decision to allow the agent to conduct his inspections.[4] It follows,

---

4. I recognize, of course, that the agent conducted no custodial interrogation of Joseph Hrdlic-

ka—and that *"Miranda"* warnings were not legally required—and that the agent had no

therefore, that all evidence obtained by Lenckus in the course of his five-month search at the Hrdlicka office, as well as all subsequently obtained evidence derived therefrom, ought be suppressed as the fruits of an illegal search. It will be my recommendation that the court grant defendants' suppression motion and provide the requested relief.

■ In reaching this conclusion, I have considered and rejected the government's argument. that the evidentiary hearing should be reopened so that the government may present additional evidence bearing upon the question of whether Joseph Hrdlicka was misled by the misrepresentations of agent Lenckus. The government has in my opinion offered no substantial justification for either its failure to have presented the contemplated evidence at the past evidentiary hearing or its post-hoc request for an additional opportunity to attempt to meet its burden of proof.

As I stated at the conclusion of the evidentiary hearing in this case, the granting of defendants' suppression motion will require a further hearing to precisely identify the evidentiary material to be suppressed. It is my view that this hearing should be delayed until after the parties have had an opportunity to object to this Report and Recommendation and the court has issued its ruling on any objections that may be filed. If the court adopts my proposed findings of fact and agrees with my recommendation that the suppression motion ought be granted, a further hearing on the scope of the suppression order will be promptly scheduled.

### RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED that this court:

1. Adopt as its own the Proposed Findings of Fact made herein.
2. Conclude that the five-month search of defendants' books and records by

agent Lenckus was in violation of defendants' Fourth Amendment rights.

3. GRANT defendants' motion to suppress all evidence obtained as a result of agent Lenckus's search of their books and records, and order a prompt hearing before the magistrate for the purpose of determining the precise evidence to be so suppressed.

---

affirmative duty to warn Hrdlicka that he could withhold his consent to the search. The lack of advice on legal rights to a suspect, however, is a pertinent factor to be considered among the totality of circumstances affecting the voluntariness of consent to search.