**VEKAMAF HOLLAND B.V., Cojafex B.V., and Inkamaf B.V., Appellants,**

v.

**PIPE BENDERS, INC., Modern Constructors of Duluth, Minnesota, Inc., Marvin W. Meierhoff and Robert M. Meierhoff, Appellees.**

**No. 81–1686.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1982.

Decided Dec. 29, 1982.

Rehearing Denied Feb. 28, 1983.

Richard J. Flynn, John E. Haley, Richard E. Young, Sidley & Austin, Washington, D.C., Robert K. McCarthy, Donovan, McCarthy, Crassweller, Larson & Magie, Duluth, Minn., for appellants.

John D. Gould, Douglas A. Strawbridge, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, ROSS, and FAGG, Circuit Judges.

LAY, Chief Judge.

This is an appeal from a lengthy and involved action for breach of a written secrecy agreement, patent infringement, and misappropriation of trade secrets. The underlying dispute involves machines utilizing a continuous inductive heating method of bending large diameter metal pipes.[1]

Plaintiffs (hereinafter sometimes referred to collectively as "Vekamaf") are three Dutch companies engaged in the design, production, and sale of technical and engineering equipment. Vekamaf, the parent company, handles all international sales except those in the United States, which are handled by one of its subsidiaries, Inkamaf.

Cojafex, another subsidiary, handles engineering, research, and development. In 1968, Cojafex entered into a licensing agreement with a Czechoslovakian firm for the right to manufacture and sell pipe-bending machines utilizing the continuous inductive heating process.[2] Vekamaf's first machine broke while bending heavy pipe on a small radius, and Marinus Hofstede, Vekamaf's engineer, ascertained that "lateral forces," or forces transverse to the axis of unbent pipe, caused the breakage. Hofstede developed a heat-sensitive link that would detect and eliminate the presence of lateral forces. The determined cause of the lateral forces was displacement of the effective heated zone—the softest part of the pipe and the part where bending occurs—from the plane of the pivot point of the bending arm of the machine. The link served to locate the optimum position of the heat inductor longitudinally along the pipe. This method of custom bending industrial pipe was patented by the plaintiffs in April 1973 (United States Patent No. 3,724,258). The patented process was incorporated into the Czech machine and was referred to as the "generation II" design; plaintiffs later effectuated an improvement in this design providing greater mobility of the machine frame and referred to this improvement as the "generation III" design. Both designs detect deviation in the radius of a bend during the bending operation and correct it by moving the heat inductor longitudinally on the axis of the unbent portion of pipe to

---

1. The breach of agreement count was dismissed upon a motion for summary judgment and the remaining counts were tried to a magistrate sitting as a special master. The district court originally adopted the magistrate's recommendations in toto and ordered dismissal of the patent infringement and misappropriation of trade secrets counts without opinion. On an initial appeal we found that because of the complexity of the issues and the magnitude of plaintiffs' objections a reasoned opinion by the district court was necessary and remanded for that purpose. *Vekamaf Holland B.V. v. Pipe Benders, Inc.*, 671 F.2d 1185 (8th Cir.1982). We retained jurisdiction of the appeal pending certification of the district court's opinion. The district court filed its opinion on July 9, 1982, and upon resubmission to this court a new panel heard oral arguments and entertained the appeal de novo.

2. The continuous inductive heating technique of pipe bending bends pipe by pushing it horizontally along a frame through a stationary circular electric heating coil while the forward end of the pipe is clamped to an arm that rotates on a horizontal plane around a pivot point. The process was patented by the Czech firm in Czechoslovakia and India, and a similar process had been patented previously in the United States. In 1968 a United States patent was issued to two Japanese inventors.

These patents reasonably established the "state of the art" known at the time Vekamaf applied for its United States' patent.

position the effective heated zone substantially in the plane of the center of rotation.

Defendants (hereinafter sometimes referred to as "Pipe Benders") are two Minnesota corporations, Pipe Benders, Inc. and Modern Constructors of Duluth, Minnesota, Inc., and two principals of the corporate parties, Robert and Marvin Meierhoff, who have been involved in the business of industrial pipe fabrication since the 1940's. In the late 1960's, defendants became interested in processes for bending large diameter pipe. In 1971, Robert Meierhoff traveled to Japan to observe the equipment jointly developed by Dai-Ichi and Mitsubishi utilizing the continuous movement inductive heating method. Later that year, Marvin Meierhoff contacted Vekamaf by mail regarding its equipment. Vekamaf responded in a letter containing general information and offered to meet the Meierhoffs in Duluth; the Meierhoffs' reply indicated an interest in purchasing either the Dai-Ichi or Vekamaf's machine and asked to see Vekamaf's machine. The Meierhoffs were evidently also contemplating building their own machine at this point.

Representatives of Vekamaf met with the Meierhoffs in Duluth in January 1972, discussing technical information regarding performance capabilities and providing technical sales literature including some performance graphs. Defendants allege, and the magistrate found, that the Meierhoffs informed Vekamaf of their desire to build, rather than purchase, at this particular meeting in Duluth. Vekamaf invited the Meierhoffs to view its machine in operation in the Netherlands and the Meierhoffs traveled to Europe to do so in February 1972. At that time price quotations were prepared and the Meierhoffs signed a secrecy agreement at Vekamaf's request promising not to disclose or use any confidential information regarding Vekamaf's process until it became public knowledge. Vekamaf's United States patent application was then still pending. Technical information including the theory behind the patented process and alleged trade secrets was discussed. The Meierhoffs also viewed and photographed Vekamaf's machine in operation.

Pipe Benders commenced design and construction of their own machine in April 1972 and successfully completed the project in March 1973.[3] In late 1973 Hofstede of Vekamaf obtained some of Pipe Benders' sales information regarding its new pipe bending machines. The information contained performance graphs similar or identical to those that Vekamaf had given the Meierhoffs during their 1972 meetings in Duluth and the Netherlands. Suspicious of improper use of Vekamaf's trade secrets, Hofstede contacted the Meierhoffs, who denied any impropriety and refused to allow an examination of their machines. On June 10, 1975, Vekamaf commenced this action, claiming: (1) patent infringement; (2) breach of the secrecy agreement; and (3) misappropriation of trade secrets. All three claims were dismissed by the district court upon the magistrate's recommendation and plaintiffs allege on appeal that the district court's findings were in error.

*Discussion.*

Our standard of review of the district court's findings of fact is prescribed by rule 52(a) of the Federal Rules of Civil Procedure as the clearly erroneous standard. *See Iten Leasing Co. v. Burroughs Corp.,* 684 F.2d 573, 575 (8th Cir.1982); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 131 (8th Cir.), *cert. denied,* 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979).[4]

---

**3.** Vekamaf alleges that its salesman, Gebhard, visited Pipe Benders in Duluth during this time and imparted additional technical information. Pipe Benders deny any such meeting, and the magistrate found no evidence to substantiate Gebhard's trip.

**4.** Vekamaf initially contends that the July 9 opinion of the district court is not a reasoned response to its objections and thus fails to comply with our order. This argument fails to perceive the function of the district court as a fact finder. Rule 52(a) requires a district court sitting without a jury to make findings of fact or adopt the findings made by a master. The rule requires only brief, definite findings and not particularized details. *See Swanson & Youngdale, Inc. v. Seagrave Corp.,* 561 F.2d 171, 173 (8th Cir.1977) (quoting Fed.R.Civ.P.

### 1. *Patent Infringement Count.*

The foundation of Vekamaf's case rests on the premise that the bending of large diameter metal pipes can be accomplished by only one process and that process requires the use of Vekamaf's patented link or equivalent sensing device for the control of lateral forces. Thus, Vekamaf urges, for defendants to bend large pipes successfully they must have used the link, at least initially, and infringed Vekamaf's patent. To prove this premise Vekamaf relied heavily on the expert testimony of Dr. Roger Caron about the lateral forces. Vekamaf also introduced circumstantial evidence in support of this theory.[5]

The magistrate totally discredited the testimony of Dr. Caron finding that his conclusions were "weakened by pedantic argumentation and an obvious desire to espouse the plaintiffs' cause." Magistrate's Report at 34. The magistrate then analyzed the other evidence offered and found the evidence when considered as a whole was insufficient to prove Vekamaf's theory. Vekamaf's primary objection and contention now is that the magistrate erroneously assessed the credibility of Dr. Caron.

Vekamaf argues that the magistrate's assessment of the credibility of defendants' witnesses is in stark contrast to the assessment of Dr. Caron's credibility. Vekamaf contends that by accepting the testimony of defendants' witnesses, the magistrate overlooked the inconsistencies in their testimony and ignored his own findings that defendants' conduct adversely reflected on their general credibility. By contrast, it is urged the magistrate's assertions that Dr. Caron was biased and acted as an advocate are not supported by the record. Further, Vekamaf says the magistrate allowed his personal belief that a mechanical operation could almost always be performed in more than one way to infect his assessment of Dr. Caron's credibility.

These objections were considered and rejected by the district court. That court noted inconsistencies in the testimony of Dr. Caron and deferred to the magistrate's findings of credibility. We agree with the district court that the magistrate's determinations of credibility are entitled to great weight on appeal. *See Stanley v. Henderson,* 597 F.2d 651, 653 (8th Cir.1979) (per curiam); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129, 131–32 (8th Cir.), *cert. denied,* 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979). Our review of the record does reveal a morass of confusing, conflicting, and sometimes incredible testimony, but it does not leave us with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We cannot say that the findings of the magistrate as adopted by the district court are clearly erroneous and we accept those findings of credibility.

Vekamaf's remaining arguments address the erroneous findings made by the

---

52(a) advisory committee note). The findings must be only definite enough to allow an appellate court some discernible basis for review. The district court's order upon our remand addressed Vekamaf's major objections seriatim and thoroughly discussed the pertinent findings made by the magistrate. We conclude that the district court's July 9 opinion complies with our remanding directions in that it provides a reasoned response.

5. Briefly summarized, the circumstantial evidence was intended to prove:

[1] That the defendants' machine bears a remarkable physical resemblance to plaintiffs' machine and includes the ability to move the heating coil longitudinally along the pipe being bent.

[2] That the defendants lacked the education, experience or intelligence necessary to design and construct a pipe bending machine with the capability of defendants' machine.

[3] That defendants' internal documents indicate that installation of a link, or other sensing device, was contemplated by defendants in the design and construction stages of their machine.

[4] That defendants copied plaintiffs' performance graphs.

[5] That observation of defendants' machine in operation confirms all of the above. Magistrate's Memorandum Decision and Recommendation, No. 5–75–56, slip op. at 31–32 (D.Minn. Feb. 18, 1981) (hereinafter "Magistrate's Report").

magistrate with respect to other evidence of infringement that Vekamaf introduced. Vekamaf claims that the magistrate ignored some of its evidence and erroneously found that Pipe Benders used an alternative process to bend pipe. We find these claims unfounded.

The magistrate discussed and made findings of fact about each of the areas of proof offered by Vekamaf. It appears only that the inferences drawn by the magistrate from this evidence were contrary to the position urged by Vekamaf. We see no reason to reiterate those findings here and find each supported by the record.

The magistrate's conclusion that Pipe Benders used an alternative process to bend pipe is also supported by the record. The magistrate found no evidence that Pipe Benders ever experimented with the use of a sensing link and Pipe Benders introduced substantial direct evidence of the method they used to monitor the location of the heating coil. It is quite feasible that Pipe Benders developed its process without resorting to the sensing link and thus, the magistrate's finding is not clearly erroneous in this regard.

■ There is substantial evidence in the record to support the magistrate's recommendation and the district court's conclusion that Vekamaf failed to prove patent infringement by a preponderance of the evidence. We find no error below and affirm the dismissal of the patent infringement count.

### 2. *Misappropriation of Trade Secrets Count.*

Vekamaf alleges misappropriation of eleven trade secrets plus a twelfth "compendium" trade secret. To prevail on this count Vekamaf must prove: (1) the existence of a trade secret in fact; (2) the acquisition of the trade secret as a result of a confidential relationship; and (3) unauthorized use of the trade secret by the defendant. *E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108, 1112 (8th Cir.1969); *Venn v. Goedert,* 319 F.2d 812, 815 (8th Cir.1963). The magistrate found that Vekamaf did not prove one or more elements for each of its asserted trade secrets. He concluded that most of the alleged trade secrets were not trade secrets at all within the meaning of the law,[6] and that others had not been improperly acquired or used by the defendants.

■ The magistrate's recommendation and the district court's order analyzed each asserted trade secret separately and found some essential element of proof absent. There is ample support in the record for each of the findings of fact made by the magistrate and district court and it is unnecessary to discuss each allegation here. We conclude that these findings are not clearly erroneous and affirm the dismissal of the misappropriation of trade secrets count.

### 3. *Consideration of the Evidence as a Whole.*

Finally, Vekamaf asserts that under both counts the magistrate failed to consider the evidence as a whole. Vekamaf argues that under the patent infringement count the magistrate engaged in only piecemeal analysis of Vekamaf's ten separate areas of proof. Under the trade secret count the magistrate is faulted for not relating the eleven individual trade secrets in discussing the "compendium" trade secret. Neither of these charges is supported by the record. The extent and thoroughness of the magistrate's report belies Vekamaf's contention that he did not consider the evidence as a whole. There is no reason not to give full credence to the magistrate's statement that he considered the evidence as a whole. *See* Magistrate's Report at 45.

---

**6.** The Minnesota Supreme Court has held that an item is a trade secret or confidential information when: the protected matter (1) is not generally known or readily ascertainable; (2) provides a demonstrable competitive advantage; (3) was gained at considerable expense to the plaintiff; and (4) was such that the plaintiff intended to keep it confidential. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 90 (Minn.1979).

*Conclusion.*

The sum and substance of Vekamaf's objections in the district court and on appeal here is that the magistrate weighed the evidence in light of the credibility of all the witnesses and decided the facts adversely to Vekamaf. It is not our function to retry this case, but only to determine whether substantial evidence supports the lower court's findings and that they are not clearly erroneous. There appears to be no clear error regarding the magistrate's factual findings and the district court properly applied the law. The judgment of the district court is affirmed.