**Gary Edward BLIZZARD, Plaintiff,**

v.

**Captain Nelson QUILLEN, Warden John Ellingsworth, Defendants.**

**Civ. A. No. 81–576 MMS.**

United States District Court,
D. Delaware.

Feb. 7, 1984.

Gary Edward Blizzard, pro se.

Susan H. Kirk-Ryan, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The Magistrate held an evidentiary hearing in this prisoner civil rights action pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* Fed.R.Civ.P. 72(b). He issued a Report and Recommendation proposing that judgment be rendered in favor of Warden John Ellingsworth of the Sussex Correctional Institution ("SCI") and recommending entry of judgment in the amount of $500 against a second defendant, Captain Nelson Quillen. Quillen filed objections[1] to the Magis-

---

1. The objections were filed in the names of both defendants but deal only with the Magistrate's award of damages against defendant Quillen. The objections therefore are referred to herein as "Quillen's objections" or "defendant's objections."

trate's Report and Recommendation. Plaintiff responded to Quillen's objections but did not object to the Magistrate's dismissal of the case against Ellingsworth.

■ A district court must conduct de novo review of any portion of a magistrate's report issued under section 636(b)(1)(B) to which objections have been made. *Sullivan v. Cuyler*, 723 F.2d 1077 at 1085 (3d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). If no objection is filed, the district court need only review the "face of the record" for clear error. 28 U.S.C. § 636, advisory committee note. Thus, in addressing those aspects of the Magistrate's Report and Recommendation to which defendant Quillen objected, this Court has made a de novo determination after reviewing the entire record. The Court has listened to the tape recordings of Blizzard's evidentiary hearing and has read all submissions by the parties. Based on this independent review of the evidence, the court will adopt the Magistrate's Report and Recommendation in its entirety.

A short recitation of the facts will suffice. In May, 1980, plaintiff Gary Blizzard cooperated in a Governor's Task Force investigating corruption and other problems in the Delaware Department of Correction. For protection against retaliation by other inmates, Blizzard was housed at the Kent Correctional Institution. He was later released on supervised custody. In August, 1981, however, Blizzard was reincarcerated and placed in the Delaware Correctional Center for violating a curfew rule. Through the efforts of Blizzard's mother, who was concerned for her son's safety, plaintiff was transferred to SCI. At first SCI officials housed Blizzard in the Evaluation Tier where he was isolated from other inmates. Then, on August 14, 1981, Blizzard was transferred to the C–2 tier. Blizzard alleges that he objected to this transfer because on the C–2 tier he would come into contact with other inmates.[2] Within hours of the transfer five inmates assaulted Blizzard, breaking a bone in his hand and producing a cut on his head that required four stitches.

The Magistrate found that Warden Ellingsworth was not personally involved in Blizzard's transfer and thus could not be liable. Defendant Quillen, on the other hand, was found responsible. The Magistrate determined that Quillen authorized Blizzard's transfer despite his knowledge of Blizzard's involvement with the Task Force and his knowledge that Blizzard had received several threats against his life in retaliation for his association with that investigation. The Magistrate further found that Quillen ordered Blizzard's transfer to the C–2 tier over Blizzard's explicit objections. Accordingly, the Magistrate held, Quillen acted in reckless disregard of Blizzard's safety and in violation of Blizzard's clearly established constitutional rights.

Defendant Quillen objects to the Magistrate's report on three grounds. First, he contends that the Magistrate incorrectly evaluated the evidence; the evidence, defendant argues, did not show that Quillen knew Blizzard was threatened because of his involvement with the Task Force or that Blizzard objected to his transfer to the C–2 tier. Second, Quillen argues that even if the Magistrate's factual findings are correct, Quillen cannot be held liable because he did not know of any threats made by the specific individuals who attacked Blizzard. Third, Quillen contends he is entitled to good faith immunity because the law was not clearly established at the time of Blizzard's transfer that prison officials were required to protect prisoners without knowledge of threats by specific inmates.

The Court disagrees with all three objections.

## I. *Weight of the Evidence*

Defendant's first objection revolves around a question of credibility. The Magistrate assessed the testimony as follows:

Turning to defendant Quillen, the testimony presented at trial convinces me that he knew Blizzard would be in danger if he was placed with other inmates and that he moved plaintiff from the Evaluation Tier to C–2 Tier without re-

---

**2.** The other prisoners in the C–2 tier were all on "Rule 31" protective custody.

gard for his safety. Quillen knew of Blizzard's connection with the Task Force. He knew of the danger generally to Blizzard as a result of that connection. He even knew that Blizzard had already received threats against his life since his arrival at SCI because he was viewed as a snitch. Despite this knowledge and plaintiff's protests, Quillen ordered plaintiff moved to C–2 Tier. On C–2 Tier Blizzard was exposed to other inmates and within hours of his arrival was attacked by those inmates.

Mag.Rep. at 5 (footnote omitted).

■ If a district judge resolves a credibility dispute differently than the magistrate, Article III and the due process clause usually require the court to conduct a fresh evidentiary hearing. See *United States v. Raddatz,* 447 U.S. 667, 680 n. 7, 100 S.Ct. 2406, 2415 n. 7, 65 L.Ed.2d 424 (1980); *Garcia v. Boldin,* 691 F.2d 1172, 1179 n. 13 (5th Cir.1982); *United States v. Hrdlicka,* 520 F.Supp. 403, 404 (W.D.Wis.1981); *Fair v. Cuyler,* 506 F.Supp. 1088, 1091 (E.D.Pa. 1981). But if the court on de novo review agrees with the Magistrate's credibility assessment, it need not hold an additional hearing. *United States v. Raddatz,* 447 U.S. at 680–81, 100 S.Ct. at 2414–15; *United States v. Veteto,* 701 F.2d 136, 140 (11th Cir.) *cert. denied,* —— U.S. ——, 103 S.Ct. 3548, 77 L.Ed.2d 1396 (1983). The case law has not clearly defined what weight, if any, a district court should afford to the magistrate's credibility assessments that are based on his personal observations of witnesses' demeanor. *Compare United States v. Raddatz,* 447 U.S. at 680, 100 S.Ct. at 2414, and *Calderon v. Waco Lighthouse For The Blind,* 630 F.2d 352, 356 (5th Cir.1980), *with Vekamaf Holland B.V. v. Pipe Benders, Inc.,* 696 F.2d 608, 611 (8th Cir.1982), and *United States v. Hrdlicka,* 520 F.Supp. at 406. I believe that implicit in *Raddatz* is a recognition that the credibility findings of a magistrate, who personally observed and listened to the testimony of live witnesses, may be accepted unless the district judge, in his de novo review, finds reason to question the magistrate's assessment of the evidence.

■ Upon independent review of the tape recordings, the Court agrees with the Magistrate's assessment of credibility. After listening to the complete recording of Blizzard's evidentiary hearing, I find Blizzard's testimony more coherent and internally consistent than that given by the defense witnesses who displayed a poor recollection of the details of Blizzard's transfer hearing. Blizzard testified consistently that he objected to his transfer on the ground that he was in danger of retributive attacks by the general prison population. Quillen, on the other hand, spoke contradictorily as to whether he knew of Blizzard's involvement in the Task Force or the danger he was under as a "snitch." Quillen and another prison guard did testify that Blizzard never objected to his transfer, but their recollection of this matter was far from clear. Upon review of the record, I am confident that the Magistrate's findings are correct and I find no reason to order a new hearing or take additional evidence. I therefore find that Quillen, knowing of Blizzard's participation in the Task Force and of Blizzard's reputation as a squealer, and knowing of the danger posed to Blizzard by a transfer, moved Blizzard to the C–2 tier over Blizzard's specific objection.

## II. *Duty to Protect Inmate From Attacks*

■ Defendant's second contention is also without merit. As the Magistrate stated, it is well settled that "[w]hen a prison official or guard has reason to know that an inmate is in danger he must take '... reasonable care to provide reasonable protection from such unreasonable risk of harm.'" Mag.Rep. at 6, quoting *Withers v. Levine,* 615 F.2d 158, 162 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). *See also Holmes v. Goldin,* 615 F.2d 83, 85 (2d Cir.1980); *Little v. Walker,* 552 F.2d 193 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978); *Curtis v. Everette,* 489 F.2d 516 (3d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Holt v. Sarver,* 442 F.2d 304 (8th

Cir.1971); *Schaal v. Rowe,* 460 F.Supp. 155 (S.D.Ill.1978). Other courts have recognized that when prison officials know of a special danger posed to a specific prisoner, even though that danger comes from the general prison population and not a specifically named attacker, the officials must take reasonable steps to protect the threatened prisoner. *See Gullatte v. Potts,* 654 F.2d 1007, 1013 (5th Cir.1981) (prison official liable if knew or should have known that danger was posed to "snitch" placed in general prison population and it did not take reasonable steps to protect prisoner from danger); *West v. Rowe,* 448 F.Supp. 58, 59–60 (N.D.Ill.1978) (plaintiff stated cause of action against defendants for unreasonably failing to protect him from assault by inmate after plaintiff wrote letters to defendants stating that his life was in danger); *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir.1974) (defendants liable if failed to protect plaintiff when knew of previous beatings by fellow inmates and of plaintiff's inability to defend self).

Quillen rests his argument entirely on one case, asserting that *Ewell v. Vaughn,* No. 77–92 (D.Del. Aug. 1, 1978), establishes the legality of defendant Quillen's actions. *Ewell,* however, does not support Quillen's position. In *Ewell* the plaintiff had received threats from other prisoners because he had testified against a fellow inmate. A Pre-Trial Classification Team recommended that Ewell be housed in a Maxi-

mum Security Block over Ewell's initial objection. Judge Stapleton mentioned that this Pre-Trial Classification Team knew of a number of specific threats against Ewell but that "none of the inmates who were known to be specific threats were housed in B-Block." This observation by Judge Stapleton, taken out of context, might support defendant's argument. But Judge Stapleton proceeded to explain that Ewell's counselor recommended to Ewell that he accept placement in B-Block for security reasons and that *"she convinced Ewell to accept this housing." Id.,* slip op. at 3 (emphasis added). The Pre-Trial Classification Team's recommendation itself contained an explanation that the placement in B-Block was made for security reasons. *Id.,* slip op. at 4. Furthermore, Judge Stapleton stated that the Institution Classification Committee ("ICC"), in approving the Pre-Trial Classification Team's action, acted in a manner "designed to be in the interests of Ewell's protective needs." *Id.,* slip op. at 4–5. Thus, the question of whether a well-known generalized threat to an inmate could create to a duty to protect the inmate never arose in *Ewell.* Instead, Judge Stapleton found that the defendants acted in what they thought was the inmate's best interest and that Ewell agreed with their judgment.[3] In contrast, this Court has already found that Quillen, with knowledge that Blizzard was in danger as a snitch, transferred Blizzard over his specif-

---

**3.** In fact, Judge Stapleton concluded that on the day after Ewell's transfer to B-Block was approved by the I.C.C., Ewell argued before the Major Adjustment Board that he be taken *off* protective custody and placed in *less restrictive* custody. *Id.,* slip op. at 6.

Later in the *Ewell* opinion Judge Stapleton found that although certain individuals were aware of *specific threats* against the plaintiff while he was housed in the B-Block of Maximum Security, the named defendants were not liable. Only two defendants, Judge Stapleton explained, knew or should have known of the threats against Ewell. The first, Commissioner Vaughn, acted properly by notifying certain unnamed prison officials of the threats. *Id.,* slip op. at 8, 11. The second, Lieutenant Thornburg, was not liable because he could not foresee the intervening negligence and dereliction of duty by other non-defendant security guards who opened the plaintiff's electronically locked cell

door and let plaintiff walk down his corridor unattended. *Id.,* slip op. at 9–12. Thornburg could not be liable, Judge Stapleton held, simply by allowing Ewell to remain in Maximum Security because Ewell "had it within his power totally to avoid contact with other inmates" by remaining in his locked cell. *Id.,* slip op. at 12. In contrast, the Magistrate found in this case, and the Court agrees with that finding, that Blizzard "did not know and was not told that he could lock himself in his own cell." Mag.Rep. at 3. Although defendant has argued that as a matter of fact Blizzard did know he could remain locked in this cell—a factual finding rejected by this Court—Quillen does not argue that he exercised due care because he *believed* that Blizzard knew he could lock himself in his cell. In any event, upon review of the tapes, the Court concludes that Quillen should have known that prisoners were not informed of any right to remain locked in their cells.

ic objections and specific warnings that a transfer would jeopardize his safety because of his reputation as a snitch. Such conduct clearly violates Blizzard's constitutional rights.

### III. *Official Immunity*

■ Defendant again relies entirely on *Ewell* in support of his final objection. Quillen argues that because *Ewell* established that officials are not liable for failure to protect against attacks by unknown prisoners, he could not reasonably have known that he was violating a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). The Court disagrees. The law, as explained earlier, was well established by August of 1981 that prison officials could not ignore concrete and immediate threats against a prisoner. *See* text *supra* at 1449. Quillen knew that Blizzard was endangered as a reputed squealer and was advised of previous threats on Blizzard's life because of his involvement with the Task Force. Nonetheless, over Blizzard's protestations, Quillen moved Blizzard into an area of the prison where Blizzard would be vulnerable to attack. The Court holds that Quillen should reasonably have known that his action would violate Blizzard's clearly established constitutional rights. *See Gullatte v. Potts*, 654 F.2d at 1012–1013 (damages may be imposed against prison officials for transfer of prisoner in 1975 if knew prisoner was a snitch and would be in danger if placed in general population); *Little v. Walker*, 552 F.2d at 197–98 (defendants may be liable for damages if, from 1972 to 1974, they intentionally or recklessly failed to protect plaintiff from assault by other inmates). The Court finds the Magistrate's award of damages reasonable and will therefore adopt the Magistrate's recommended award of $500 against defendant Quillen.

■ With regard to defendant Ellingsworth, the Court has found no error in the Magistrate's report. That portion of the Magistrate's Report and Recommendation therefore will also be adopted.

An appropriate order will issue.