46 F.3d 1145
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Christopher David SEVEY, Plaintiff-Appellant,
v.
Ron ANGELONE; Brenda Burns; Carol Spell, counselor,
Defendants-Appellees.
 No. 93-16351.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Dec. 15, 1994.
Decided: Jan. 30, 1995.
 
 1
 Before: SKOPIL, NORRIS, and HALL, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Nevada state prisoner Christopher Sevey appeals the district court's grant of summary judgment in favor of defendants and the court's order striking an expert's affidavit. We affirm.
 
 I.
 
 4
 Qualified immunity shields government officials who perform discretionary functions from civil liability for damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Sevey claims that his Eighth and Fourteenth Amendment rights were violated by defendants' deliberate indifference in their failure to protect him from an attack by a fellow inmate. In this case there is no dispute that at the time of the attack the law was clearly established. It was clear that prison officials had an obligation to protect inmates from attack by other inmates. See Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988); Berg v. Kincheloe, 794 F.2d 457, 460-61 (9th Cir. 1986). It was also clear that prison officials who act with "deliberate indifference" to an inmate's safety violate the Eighth Amendment. See, e.g. Klingele, 849 F.2d at 412. The dispositive issue, however, is whether a reasonable official would have believed his or her conduct to be lawful. See Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).
 
 
 5
 Warden Burns locked down the prison shortly before plaintiff was attacked, at least in part in response to a resurgence in gang activity. During the lockdown, three suspected Aryan Warriors were immediately transferred out of the institution. While in this institution, Sevey was offered protective custody on at least two occasions; once, after the attack by Eberley and again after Sevey reentered the general population and expressed concern to Carol Spell. Sevey refused both of these offers. It is uncontroverted that protective custody was available at all times upon request by Sevey.
 
 
 6
 Relying on Blizzard v. Quillen, 579 F. Supp. 1446 (D. Del. 1984), Sevey argues that defendants acted with deliberate indifference to his safety because he was "housed in the same Unit as members of the Aryan Warriors, and placed in the general population." Appellant's Opening Brief at 10. Blizzard does not support Sevey's argument because Sevey himself requested placement in the general population, while in Blizzard, the inmate objected to placement in an area where he risked attack. Id. at 1450-51.
 
 
 7
 Schuster v. City of New York, 154 N.E.2d 534 (N.Y. Ct. App. 1958), also relied upon by Sevey, is inapposite. The Schuster court addressed only whether police owed a duty of reasonable care to a police informant who received death threats, clearly not the issue in this appeal.
 
 
 8
 In Zatler v. Wainwright, 802 F.2d 397, 403 (11th Cir. 1986), the court found that prison officials did not exhibit deliberate indifference to an inmate with a high risk of attack, because protective custody was available at all times. Sevey contends that his refusal to enter protective custody is entitled to little weight because he only refused custody after being assured that all Aryan Warriors had been transferred. Sevey's deposition reveals, however, that as soon as he rejoined the general population he saw at least one Aryan Warrior, yet refused a subsequent offer of protective custody made by Carol Spell.
 
 
 9
 Sevey also claims that defendants should have forced him into protective custody. Defendants cannot be faulted for allowing him to remain in the general population. Defendants knew that three Aryan Warriors were transferred out of the prison. There was no specific evidence that Sevey faced a future threat. The anonymous kite received by Warden Burns was, as the district court concluded, ambiguous as to whether it revealed a future threat to Sevey. Moreover, Sevey had specifically refused protective custody after the Eberley attack, which Sevey claims was made at the hands of the Aryan Warriors. Under these circumstances, we cannot say that it was unreasonable to allow Sevey to remain in the general population. See Harding v. Jones, 768 F. Supp. 275, 278 (E.D. Mo. 1991) ("Plaintiff made a voluntary decision to remain in the general prison population. Defendants cannot be charged with deliberate indifference for allowing him to make such a decision."). Contrary to Sevey's contentions, defendants in this case could believe that their conduct was lawful under the circumstances.
 
 II.
 
 10
 We agree with the district court that Sevey's untimely submission of an expert affidavit failed to comply with Federal Rule of Civil Procedure 56(f) and Local Rule 140-6. Neither the affidavit required by Rule 56(f), nor the memorandum required by Rule 140-6 were submitted by Sevey's counsel. Accordingly, the district court did not abuse its discretion in granting defendant's motion to strike. See Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991) (excluding untimely affidavit for failure to comply with Rule 56(f)), cert. denied, 113 S. Ct. 413 (1992); United States v. Gray, 876 F.2d 1411, 1414 (9th Cir. 1989) (giving broad deference to district court's interpretation and application of local rules), cert. denied, 495 U.S. 930 (1990).
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3